IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY ALAN GLOSSNER, | : | Civil No. 3:18-cv-1029 |
| Petitioner | : | (Judge Munley) |
| v. | : | |
| COMMONWEALTH OF PENNSYLVANIA, PA STATE ATTORNEY GENERAL, | : | |
| Respondents | : | |

## MEMORANDUM

On May 16, 2018, Petitioner Jeffrey Alan Glossner ("Glossner"), a state inmate, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his Pennsylvania convictions for involuntary deviate sexual intercourse with a child, statutory sexual assault, sexual assault, aggravated indecent sexual assault with a child less than thirteen years of age, and indecent assault. (Doc. 1, p. 19). On June 8, 2018, an Order issued directing Respondents to submit a memorandum concerning the timeliness of the petition and file pertinent state court documents. (Doc. 3). Respondents sought, and were granted, additional time to respond. (Docs. 11, 16). Respondents filed a response (Doc. 17) on September 19, 2018. Petitioner has filed several documents addressing the timeliness of his petition. (Docs. 12, 13, 15, 18, 19). The issue of the timeliness of the petition is ripe for disposition. For the reasons set forth below, the Court concludes that the petition for writ of habeas corpus is subject to dismissal as it is untimely. See 28 U.S.C. § 2244(d) (1).

I.   **Background**

On August 4, 2011, a jury convicted Glossner of the above cited offenses in Court of Common Pleas of Clinton County Criminal case CP-18-CR-28-2011. (Doc. 1, pp. 1, 18). The trial court imposed an aggregate sentence of thirteen to thirty years' imprisonment on February 2, 2012. (Doc. 1, p. 1.) Glossner filed a direct appeal. The Superior Court of Pennsylvania affirmed the judgment of sentence on August 31, 2012. (Id. at 19). He did not file a petition for allowance of appeal to the Pennsylvania Supreme Court. (Id. at 20).

On January 2, 2013, he filed a petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA.C.S. §§ 9541–9546. The court appointed Attorney Frederick D. Lingle ("Attorney Lingle"). (Id. at 36). The PCRA court dismissed the petition on August 15, 2013, following an August 12, 2013 evidentiary hearing. (Id.) Glossner timely appealed. (Id.) Although counsel filed a praecipe to discontinue the appeal on October 22, 2013, the Superior Court reinstated the appeal on November 13, 2013. (Id. at 20, 21). On May 6, 2014, the Superior Court affirmed the dismissal of the his PCRA petition. (Id. at 18-26). Glossner did not pursue relief in the Pennsylvania Supreme Court.

On September 5, 2014, he filed a Second PCRA petition. (Id. at 28-32). The PCRA court appointed Attorney C. Rocco Rosamilia III ("Attorney Rosamilia"). (Id. at 12). The PCRA court denied the Second PCRA on February 19, 2015. (Id. at 28-32). He timely appealed to the Superior Court and, on February 26, 2016, the Superior Court

affirmed concluding that Glossner's second PCRA was untimely. (Id. at pp. 35-38). He did not file a petition for allowance of appeal with the Supreme Court. On January 23, 2017, he filed a *nunc pro tunc* appeal to the Superior Court; the Superior Court quashed the appeal on April 4, 2017. (Doc. 1, p. 41). He filed a petition for allowance of appeal which the Supreme Court denied on May 30, 2018. (Doc. 17, p. 11).

On May 16, 2018, he filed the instant federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**II.  Discussion**

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). See 28 U.S.C. § 2244(d) (1). Specifically, a state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides, in relevant part, as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
>   (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>   . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment

or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2); see Jones v. Morton, 195 F.3d 153, 157 (3d Cir. 1999). Thus, under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. See Nara v. Frank, 264 F.3d 310, 314 (3d Cir. 2001).

Glossner's direct appeal proceedings concluded on August 31, 2012, when the Superior Court affirmed his judgment of sentence. His judgment of sentence became final on September 30, 2012, thirty days after the time period to pursue relief in the Pennsylvania Supreme Court expired. The statute of limitations period commenced running as of that date and expired one year later. Hence, the present petition is time-barred unless Glossner successfully tolled the statue of limitations.

A. Statutory Tolling

We first consider statutory tolling. Section 2244(d)(2) tolls the one-year statute of limitations with respect to the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Such a petition is considered "pending" within the meaning of § 2244(d)(2) during the time a state prisoner is pursuing his state post-conviction remedies, including the time for seeking discretionary review of any court decisions, whether or not such review was actually sought. See Swartz v. Meyers, 204 F.3d 417, 424 (3d Cir. 2000).

Glossner tolled the statute of limitations on January 2, 2013, when he filed a timely PCRA. At that point, approximately 94 days of the one year limitations period had elapsed. The statute remained tolled until June 5, 2014, the last date on which he could have timely filed a petition for allowance of appeal of the Superior Court's affirmance of the denial of his PCRA petition with the Pennsylvania Supreme Court. See Swartz, 204 F.3d at 424. Glossner was required to file his petition in federal court within 271 days of the conclusion of the PCRA proceedings or, on or before March 3, 2015. He filed his federal petition on petition on May 16, 2018, 1411 days after the conclusion of the PCRA proceedings. The petition is therefore untimely.

Significantly, his second PCRA petition, filed on September 5, 2014, which was determined to be untimely by the Superior Court, does not operate to toll the statute. An untimely PCRA petition is not "properly filed" and, therefore, does not toll the statute of limitations. See Pace v. Diguglielmo, 544 U.S. 408, 417 (2005) (holding that "[b]ecause the state court rejected petitioner's PCRA petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2254(d)(2)."). See also Merritt v. Blaine, 326 F.3d 157, 167–68 (3d Cir. 2003). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." Pace, 544 U.S. at 414 (quoting Carey v. Saffold, 536 U.S. 214 (2002)).

B.  Equitable Tolling

We next turn to equitable tolling. "Equitable tolling of the limitations period is to be used sparingly and only in "extraordinary" and "rare" circumstances. See Satterfield

v. Johnson, 434 F.3d 185, 195 (3d Cir. 2006); LaCava v. Kyler, 398 F.3d 271, 274-75 (3d Cir. 2005). It is only in situations "when the principle of equity would make the rigid application of a limitation period unfair" that the doctrine of equitable tolling is to be applied. See Merritt, 326 F.3d at 168. Generally, a litigant seeking equitable tolling must establish two elements: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way." Pace, 544 at 418.

With respect to the diligent pursuit of rights, he must demonstrate that he exercised reasonable diligence in investigating and bringing the claims. See Robinson v. Johnson, 313 F.3d 128, 142 (3d Cir. 2002). Mere excusable neglect is not sufficient. See LaCava, 398 F.3d at 276. Moreover, "the party seeking equitable tolling must have acted with reasonable diligence throughout the period he seeks to toll." Warren v. Garvin, 219 F.3d 111, 113 (2d Cir. 2000) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000)). "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well." LaCava, 398 F.3d at 277 (citing Jones, 195 F.3d at 160). "The fact that a petitioner is proceeding *pro se* does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling. See Brown v. Shannon, 322 F.3d 768, 774 (3d Cir. 2003) (equitable tolling not justified where petitioner had one month left in limitations period in which he could have 'fil[ed] at least a basic *pro se* habeas petition' at the time that petitioner's attorney informed him that he would not file an appeal in state court on his behalf and

6

could no longer adequately represent him); see also Doe v. Menefee, 391 F.3d 147, 177 (2d Cir. 2004) ("Given that we expect pro se petitioners to know when the limitations period expires ... such inadvertence on Doe's part cannot constitute reasonable diligence.")." Ross v. Varano, 712 F.3d 784, 799–800 (3d Cir. 2013).

Extraordinary circumstances have been found where (1) the respondent has actively misled the petitioner, (2) the petitioner has in some extraordinary way been prevented from asserting his rights, (3) the petitioner has timely asserted his rights mistakenly in the wrong forum, see Jones, 195 F.3d at 159, or (4) the court has misled a party regarding the steps that the party needs to take to preserve a claim, see Brinson v. Vaughn, 398 F.3d 225, 230 (3d Cir. 2005). Significantly, even where extraordinary circumstances exist, "[i]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." Brown, 322 F.3d at 773 (quoting Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000)).

Because it is clear from the record that Glossner failed to exercise reasonable diligence during the time period which he seeks to toll, even if extraordinary circumstances are found to exist, he is not entitled to equitable tolling. As noted *supra*, on May 6, 2014, the Superior Court affirmed the dismissal of Glossner's first PCRA petition. (Doc. 1, pp. 18-26). On June 6, 2014, after expiration of his time to appeal to the Supreme Court, Glossner received a letter from Attorney Lingle, dated June 2, 2014,

notifying him of the Superior Court's decision. (Doc. 12, p. 7). He indicates that his attempts to reach Attorney Lingle following receipt of the Superior Court decision proved unsuccessful. (Id.)

On July 3, 2014, Glossner filed a motion for transcripts in the Court of Common Pleas of Clinton County. (Doc. 1, p. 61). On July 9, 2014, the PCRA court issued an order disposing of Glossner's *pro se* motion for transcripts, stating "[a]n Appeal is pending in this matter before the Supreme Court of Pennsylvania" and indicating that Attorney Lingle is counsel of record. (Doc. 12, p. 10; Doc. 1, p. 72). The PCRA court also directed Attorney Lingle to provide to Glossner those documents requested in the motion for transcripts. (Doc. 1, pp. 74, 75). On July 17, 2014, per the PCRA court's directive, Attorney Lingle forwarded a letter and a number of documents to Glossner. (Doc. 1, pp. 74, 75). He closed the letter with the statement that "[e]ven though I am no longer considered your attorney, if there is anything else that I can try to locate for you, please do not hesitate to contact me." (Doc. 1, pp. 74, 75). In correspondence dated July 22, 2014, Glossner confirmed that he was of the belief that Attorney Lingle no longer represented him and requested that Attorney Lingle formally withdraw from his case. (Id. at 76). The specific contents of the letter are as follows:

> This correspondence is to notify you that the Court of Common Pleas of Clinton County still has you listed as my attorney of record. It is my understanding that your representation had ended quite some time ago.
>
> The reason I am bringing this to your attention is because I had attempted to file a(n) Application to acquire my court records, the Court had denied my request because you were listed as my attorney of record. Since we both know that you are no longer representing me in this matter, I

> request that you formally file a Praecipe [sic] to Withdraw notifying the Court that your representation has ended.
>
> Kindly acknowledge receipt of this letter by filing the Praecipe [sic] to Withdraw and by sending me a copy of same. I would also appreciate it if you would send me a letter indicating when your representation had ended.
>
> Thanking you in advance for your anticipated cooperation and assistance in this matter….

(Id.). On July 22, 2014, he forwarded a letter to the Supreme Court of Pennsylvania, Office of the Prothonotary, stating that Court of Common Pleas of Clinton County "is under the impression that I have an appeal currently pending before this Court. I beg to differ, however, before I go back to Judge Williamson, I need something (in writing) from your office indicating that there are no appeals currently pending." (Id. at 77).

On August 8, 2014, the PCRA court granted Attorney Lingle's motion for counsel fees and his request to withdraw as counsel. (Doc. 1, p. 62; Doc. 12, p. 9).

On September 5, 2014, Glossner filed a second PCRA. (Doc. 1, p. 28). On September 10, 2014, the PCRA court appointed Attorney Rosamilia to represent him. (Id.). On September 25, 2014, he purportedly sent Attorney Rosamilia correspondence alerting him that "the issue of a possible time bar was due on or before Oct. 7, 2014." (Doc. 12, p. 23). Having received no response, Glossner states that he sent another letter on October 24, 2014. (Id.). Glossner received no response. (Id.). Therefore, he sought relief from the PCRA court, which ordered counsel to immediately contact Glossner. (Id. at 23, 24). Counsel did so and filed an amended second PCRA on December 29, 2014. (Id. at 24). He alleges that in the amended second PCRA, and during the evidentiary

9

hearing, Attorney Rosamilia "continued deliberately not to address the time bar issue." (Id. at 25). On February 19, 2015, the PCRA court dismissed the second PCRA petition. (Doc. 1, pp. 21-32). A timely appeal followed and, according to Glossner, Attorney Rosamilia "failed to argue the time bar issue again in the brief filed on Sept. 30, 2015." (Doc. 12, pp. 25, 26). On February 26, 2016, the Superior Court '[f]inding that [Glossner's] petition was untimely, affirmed. (Doc. 1, pp. 35-38). The Superior Court stated as follows:

> A petitioner has one year from the finality of his judgment of sentence to file a timely PCRA petition. 42 Pa.C.S. § 9545(b)(1). Judgment of sentence is final upon the completion of direct review. 42 Pa.C.S. § 9545(b)(3). Since [Glossner] did not file a petition for allowance of appeal, his judgment of sentence was final thirty days from this Court's affirmance of his judgment of sentence. This Court affirmed on August 31, 2012. [Glossner] therefore had one year from October 1, 2012, to file a timely petition. [Glossner] filed the instant petition on September 5, 2014. Thus, the petition was facially untimely.
>
> [Glossner] could only file a petition by asserting one of three timeliness exceptions. Those exceptions include interference by government officials, newly-discovered facts that were unknown to the petitioner and which could not have been ascertained with due diligence, or a new constitutional right held to apply retroactively. 42 Pa.C.S. §§ 9545(b)(1)(i)(iii). Any claim arguing an exception to the time-bar must be filed within sixty days of the date it could have been first presented. 42 Pa.C.S. § 9545(b)(2). [Glossner] failed to argue any timeliness exception below or on appeal.

(Id. at 37, 38).

It is clear from the record that Glossner knew in July 2014, the month during which he corresponded with Attorney Lingle and the Supreme Court of Pennsylvania, Office of the Prothonotary, that there was no appeal pending in the Supreme Court and

that his first PCRA proceedings had concluded. It is also clear that he was fully aware that he faced timeliness issues with respect to the filing of a second PCRA. Despite this knowledge, rather than pursue habeas relief in federal court, he chose to file a second PCRA, which was ultimately found to be untimely and, as a result, did not toll his time to file a federal petition. He did not file his federal petition until May 16, 2018, almost four years later. A prisoner seeking PCRA relief may avoid this predicament by filing a protective petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted. See Rhines v. Weber, 544 U.S. 269, 278 (2005)); see also Heleva v. Brooks, 581 F.3d 187, 190–92 (3d Cir. 2009) (discussing the practice of filing "protective" habeas petitions in the Third Circuit). "A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." Pace, 544 U.S. at 416 (citing Rhines, 544 U.S. at 278). Glossner's choice to pursue a second PCRA and his lack of diligence in filing his federal habeas petition precludes equitable tolling. Absent such tolling, his petition is untimely.

Even if we found that he exercised due diligence, he would not be entitled to equitable tolling because he fails to establish extraordinary circumstances. Initially, he argues that the statute should be tolled because first PCRA counsel, Attorney Lingle, failed to file a petition for allowance of appeal with the Pennsylvania Supreme Court and essentially abandoned him after the Superior Court affirmed the denial of his first PCRA

petition.[1] (Doc. 12, pp. 1-3). He also seeks a "waiver" of the one-year time bar based on the ineffective assistance of his second PCRA counsel, Attorney Rosamilia. (Doc. 12, pp. 22-44).

The Supreme Court has recognized that an attorney's egregious error or neglect may constitute an extraordinary circumstance for equitable tolling purposes in a capital case. See Holland v. Florida, 560 U.S. 631, 635–54 (2010); Ross, 712 F.3d at 799-800 (recognizing that egregious attorney neglect may amount to extraordinary circumstances). The Third Circuit has repeatedly found that in non-capital cases, attorney error does not constitute the "extraordinary circumstances" necessary for equitable tolling. Schlueter v. Varner, 384 F.3d 69 (3d Cir. 2004) (holding that "[g]enerally ... attorney error is not a sufficient basis for equitable tolling of the AEDPA's one-year period of limitation"); Johnson v. Hendricks, 314 F.3d 159, 163 (3d Cir. 2002) (holding that a petitioner's receipt of erroneous advice from counsel regarding the deadline for filing a federal habeas corpus petition did not warrant equitable tolling); Fahy v. Horn, 240 F.3d 239, 244 (3d Cir. 2001) (finding that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling").

Glossner's argument that Attorney Lingle "abandoned" him in failing to file a petition for allowance of appeal to the Supreme Court, and in failing to officially withdraw as counsel, lacks merit. The July 2014 letters of Attorney Lingle and Glossner

---

[1] Glossner sets forth numerous claims of his counsels' alleged ineffectiveness during the PCRA proceedings. (Doc. 12). Our discussion will be limited to those arguments relevant to equitable tolling.

indicate that both were of the understanding that Attorney Lingle's representation ceased with the appeal to the Superior Court. Within thirty days of the Superior Court's decision, Glossner was aware that there was no notice of appeal filed in the Supreme Court. There is no indication in the correspondence that he had an expectation that Attorney Lingle would file a petition for allowance of appeal with the Pennsylvania Supreme Court, or that his representation would continue in any capacity. Absent from the correspondence is any reference to an appeal to the Supreme Court, an expression of interest in such an appeal, or a request that counsel seek appellate review *nunc pro tunc*. Glossner does not assert that counsel failed to file a direct appeal after a specific request, deceived him about filing a direct appeal, or neglected his case. And, neither the failure to file a petition for allowance of appeal, nor the failure to properly withdraw as counsel of record, were included among the claims of Attorney Lingle's alleged ineffectiveness raised in Glossner's second (untimely) PCRA. (Doc. 1, pp. 29-32). He fails to demonstrate that the failure to file a notice of appeal actually prevented him from filing a timely habeas petition. Accordingly, this Court does not find that Attorney Lingle's conduct constituted egregious neglect or errors that would give rise to an extraordinary circumstance sufficient to equitably toll the AEDPA statute of limitations.

    He next seeks a "waiver" of the one-year time bar based on the ineffective assistance of his second PCRA counsel, Attorney Rosamilia. (Doc. 12, pp. 22-44). Glossner argues that Attorney Lingle's abandonment fell under the interference by government officials PCRA timeliness exception and that Attorney Rosamilia's failure to

raise this exception, either in the first instance or on appeal, resulted in the dismissal of his second PCRA as untimely and, ultimately, barred him from relief. Under the PCRA, defense counsel, whether appointed or retained privately, are not "government officials." 42 PA.C.S. § 9545(b)(4). Therefore, the actions or inactions of PCRA counsel cannot constitute interference by a government official. Moreover, Glossner does not cite the kind of egregious attorney misconduct that may constitute an "extraordinary circumstance" as there is no evidence that Attorney Rosamilia affirmatively misled Glossner. See Schlueter, 384 F.3d at 76; see also McFarlane v. Gillis, Civil No. 01–1657, 2011 WL 129212, * 14 (E.D.Pa. Jan.14, 2011) (holding that "absent affirmative misrepresentation, an attorney's mere failure to inform a client of an unsuccessful appeal does not qualify as extraordinary") (citing LaCava, 398 F.3d at 276).

He also contends that the PCRA court misled him when it stated in its July 19, 2014 order that there was an appeal pending before the Supreme Court and that Attorney Lingle was his counsel of record. (Doc. 1, p. 72). Glossner's correspondence clearly indicates that he no longer considered Attorney Lingle to be his counsel. Further, in his July 2014 correspondence to the Prothonotary of the Supreme Court, Glossner states in no uncertain terms that an appeal is not pending and seeks written confirmation of this fact so that he may proceed with additional filings in the Court of Common Pleas. At no time was he under the impression that there was, in fact, an appeal pending in the Supreme Court. Glossner fails to establish that the PCRA court's mistaken belief that he

had an appeal pending in the Supreme Court constitutes an extraordinary circumstance that would compel us to toll the statute.

## III. Conclusion

Based on the foregoing, the Court concludes that Glossner's petition is time barred.

## IV. Certificate of appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will issue.

An appropriate Order will enter.

                                      **BY THE COURT:**

                                      **s/James M. Munley**
                                      **JUDGE JAMES M. MUNLEY**
                                      **United States District Court**

November 29, 2018